**COZEN O'CONNOR**
BY:   Melanie A. Miller (MM 2992)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

Attorneys for Plaintiff
Celgene Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Celgene Corporation,** | : |
| **Plaintiff,** | : |
| v. | : Civil Action No.: _____ |
| **Selleck Chemicals LLC,** and **DOES 1-10,** | : **JURY TRIAL DEMAND** |
| **Defendants.** | : |

## COMPLAINT

Plaintiff, Celgene Corporation ("Celgene"), by and through its undersigned attorneys for its complaint against Selleck Chemicals LLC ("Selleck") and DOES 1-10 ("DOES") (collectively the "Selleck Defendants"), allege as follows:

### Parties

1. Plaintiff Celgene is a Delaware corporation with a place of business at 86 Morris Avenue, Summit, New Jersey 07901.

2. Defendant Selleck is a Texas limited liability corporation with a principal place of business at 9330 Kirby Drive, Suite 200, Houston, TX, 77054, USA.

3.  Defendant Selleck owns and controls the domain name selleckchem.com, which Selleck utilizes to sell generic drugs to consumers throughout the United States (hereinafter "Infringing Website").

4.  The true names and capacities, whether individual, corporate, associate, or otherwise of DOES are unknown to Celgene at this time and Celgene therefore sues the DOES under such fictitious names. When the true names, capacities, and activities of the DOES are ascertained, Celgene will amend this Complaint accordingly. Celgene is informed and believes and thereon alleges that all of the Selleck Defendants are responsible in some manner for the events and happenings referred to herein, and that Celgene's damages as alleged herein were proximately caused by the Selleck Defendants.

## Jurisdiction and Venue

5.  This action arises under the Acts of Congress under the Trademark and Lanham Acts, Title 15 U.S.C. § 1051, *et seq.*, and common law. As such, this Court has subject matter jurisdiction under the provisions of Title 28 U.S.C. §§ 1331 and 1338 because this action involves federal questions of law. A substantial part of the events giving rise to this action have occurred and continue to occur in this judicial district. As such, the Selleck Defendants should reasonably expect that their activities might have consequences herein.

6.  This Court has original jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1338(b) and 15 U.S.C. § 1121.

7.  This court has supplemental jurisdiction over the claims brought under the common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

8.  The Selleck Defendants are subject to this Court's personal jurisdiction because, on information and belief, (1) they do substantial business in this district; and (2) they regularly

solicit business from, do business with, and derive revenue from goods and/or services provided to customers in this district.

9. Venue is proper in this judicial district pursuant to Title 28 U.S.C. §§ 1391 (b) (2) and (c).

### Background as to Celgene's Business and Its Intellectual Property

10. Celgene is a global biopharmaceutical company which is the owner of all proprietary rights in and to the drugs REVLIMID® and OTEZLA®.

### Celgene's Revlimid® Drug

11. Celgene is the owner of all proprietary rights in and to the drug REVLIMID®, which is a drug utilized in the treatment of various cancers. REVLIMID® fights abnormal cells in the bone marrow and allows normal cells to perform their functions. The active ingredient in REVLIMID® is called lenalidomide (le-na-lid-oh-mide). REVLIMID® is used by patients with multiple myeloma (mm) and for patients with a condition called del 5q MDS and who require red blood cell transfusions to manage anemia (low red blood cell counts).

12. The REVLIMID® drug is approved by the Food and Drug Administration ("FDA"), subject to restricted distribution, and is currently available in the marketplace in the United States. The FDA has approved REVLIMID®, which is taken orally, for previously treated multiple myeloma (mm) and for del 5q myelodysplastic syndrome (MDS).

13. Because of the potential toxicity of REVLIMID®, and in an effort to minimize the chance of fetal exposure to REVLIMID®, REVLIMID® is approved for marketing only under a special restricted distribution program approved by the FDA. This program is called REVLIMID REMS® in the United States. Under these restricted distribution programs, only prescribers and pharmacists registered with the programs are allowed to prescribe and dispense

3

REVLIMID®. In addition, patients must be advised of, agree to, and comply with the requirements of the REVLIMID REMS® program in order to receive REVLIMID®.

14. Celgene is the owner of all trademark rights in and to the REVLIMID® mark throughout the world, including the following registrations in the United States:

- U.S. Reg. No. 3,255,216 for REVLIMID covering "pharmaceutical preparations for the treatment of certain cancers" in International Class 5;

- U.S. Reg. No. 3,074,309 for REVLIMID covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

- U.S. Reg. No. 2,925,808 for REVLIMID covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

- U.S. Reg. No. 3,169,244 for REVLIMID & Design covering "pharmaceutical preparations, namely cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

15. Celgene's U.S. Reg. No. 2925808 for REVLIMID has acquired incontestable status. 15 U.S.C. §1065. Thus, the registration for this mark shall be conclusive evidence of the validity of the registered mark, of Celgene's ownership of the mark, and of Celgene's exclusive right to use the registered mark in commerce in connection with the pharmaceuticals specified in the affidavits filed under the provisions of 15 U.S.C. § 1065 and/or the renewal applications filed under the provisions of 15 U.S.C. § 1059.

16. Celgene has expended significant time, energy and resources in the protection and promotion of its REVLIMID® brand throughout the world.

17. The effectiveness of the REVLIMID® drug, an immunomodulatory agent, for previously treated patients with multiple myeloma (mm) and for del 5q myelodysplastic syndrome (MDS), and for patients who require red blood cell transfusions to manage anemia (low red blood cell counts) has delivered results in terms of treatment, and has resulted in significant commercial success.

18. Through Celgene's use of the REVLIMID® mark in connection with it drug, REVLIMID® has become associated in the minds of the public with Celgene.

19. Celgene's REVLIMID® mark is strong and it is inherently distinctive.

20. Celgene's REVLIMID® mark is famous and represents the exceedingly valuable goodwill of Celgene.

### Celgene's Otezla® Drug

21. Celgene is the owner of all proprietary rights in and to the drug OTEZLA®, a prescription medicine approved for the treatment of patients with moderate to severe plaque psoriasis for whom phototherapy or systematic therapy is appropriate. OTEZLA® is also indicated for the treatment of adult patients with active psoriatic arthritis. The active ingredient in OTEZLA® is called apremilast (a-prem-i-last).

22. The OTEZLA® drug is approved by the FDA, and is currently available in the marketplace in the United States. The FDA has approved OTEZLA®, which is taken through a prescription and by pill, for the treatment of patients with moderate to severe plaque psoriasis for whom phototherapy or systematic therapy is appropriate. OTEZLA® is also indicated for the treatment of adult patients with active psoriatic arthritis.

23. OTEZLA® should be prescribed and dispensed under the care of an experienced physician who is capable of managing the possible implications of treatment with OTEZLA® and its associated side effects such as depression and suicidal behavior.

24. Celgene is the owner of all trademark rights in and to the OTEZLA® mark throughout the world, including the following registrations in the United States:

- U.S. Reg. No. 4,598,919 for OTEZLA covering "[p]harmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system; pharmaceutical preparations for the treatment of chronic inflammatory diseases, ankylosing spondylitis, psoriasis, psoriatic arthritis and cancer" in International Class 5;

- U.S. Reg. No. 4,598,865 for OTEZLA covering "[p]harmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system; pharmaceutical preparations for the treatment of chronic inflammatory diseases, ankylosing spondylitis, psoriasis, psoriatic arthritis and cancer" in International Class 5; and

- U.S. Reg. No. 4,331,247 for OTEZLA covering "[p]harmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system; pharmaceutical preparations for the treatment of certain blood diseases and cancers" in International Class 5.

25. Celgene has expended significant time, energy and resources in the protection and promotion of the OTEZLA® brand throughout the world.

26. The effectiveness of the OTEZLA® drug for the treatment of moderate to severe plaque psoriasis and active psoriatic arthritis has resulted in significant commercial success.

27. Through Celgene's use of the OTEZLA® mark in connection with the drug, OTEZLA® has become associated in the minds of the public with Celgene and Abraxis.

28. Celgene's OTEZLA® mark is strong and is inherently distinctive.

29. Celgene's OTEZLA® mark is famous and represents the exceedingly valuable goodwill of Celgene.

**Background as to the Selleck Defendants' Unlawful Conduct**

30. Selleck sells numerous branded and generic drugs to consumers throughout the United States.

31. The Infringing Website is an active website that solicits business throughout the United States, and sells to consumers throughout the United States, including consumers in the District of New Jersey, a variety of drugs including lenalidomide and apremilast.

32. The Selleck Defendants utilize, without authorization, the REVLIMID® and OTEZLA® marks in connection with the sale of lenalidomide and apremilast.

33. The Selleck Defendants are not registered or approved pharmacies under any of the United States restricted distribution programs, including the REVLIMID REMS® program.

34. The Selleck Defendants are dispensing lenalidomide to patients who are not registered with Celgene, and, as such, do not meet the conditions of the American government mandated restricted REVLIMID REMS® program.

35. The Selleck Defendants' distribution, without authorization, of lenalidomide and apremilast represents serious health and safety, and consumer protection issues.

36. The Infringing Website also uses the REVLIMID® and OTEZLA® marks as keywords on the websites and in connection with the sale of lenalidomide and apremilast.

37. By utilizing the search function at the Infringing Website, a consumer can search for the terms REVLIMID® and/or OTEZLA® and correspondingly purchase unauthorized and unregulated lenalidomide and apremilast.

38. The lenalidomide and apremilast drugs offered for sale by the Selleck Defendants are not manufactured by Celgene, and no association or relationship exists between Celgene and the Selleck Defendants.

39. The Selleck Defendants' unauthorized use of the REVLIMID® and OTEZLA® marks deceives the consumer into believing that they are purchasing genuine Celgene drugs.

40. The Selleck Defendants' unauthorized use of the REVLIMID® and OTEZLA® marks falsely suggests the existence of an association or sponsorship relationship with Celgene.

41. The Selleck Defendants' use of the REVLIMID® and OTEZLA® marks will likely result in consumer confusion in the marketplace with regards to the source and/or sponsorship of the REVLIMID® and OTEZLA® drugs.

42. Given the restricted distribution limitations provided in connection with the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

43. Given the serious health and safety issues inherent in taking the REVLIMID® and OTEZLA® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

44. The Selleck Defendants' continued use of the REVLIMID® and OTEZLA® marks is undermining Celgene's brand identity and the positive public perception of Celgene's REVLIMID® and OTEZLA® drugs. Celgene's goodwill is extremely valuable to Celgene and the Selleck Defendants' continued unauthorized use of REVLIMID® and OTEZLA® is harming Celgene.

45. The Selleck Defendants have not received authorization, or obtained a license, from Celgene to use any of Celgene's trademarks. Similarly, Celgene has not acquiesced to the Selleck Defendants' use of the REVLIMID® and OTEZLA® marks.

46. Since July of 2015, Celgene has requested that selleckchem.com cease and desist from directly and/or indirectly infringing Celgene's REVLIMID® and OTEZLA® marks.

47. Celgene has not received a response from the Selleck Defendants.

48. Despite receiving notice of their infringing activities, the Selleck Defendants, via the Infringing Website, continue to willfully use the REVLIMID® and OTEZLA® marks.

49. Sometime in August 2015, the Selleck Defendants removed Celgene's REVLIMID® and OTEZLA® marks from its website, yet it still continues to sell unauthorized lenalidomide and apremilast.

50. The Selleck Defendants' activities are likely to cause confusion or mistake among prospective consumers, are likely to dilute Celgene's REVLIMID® and OTEZLA® marks, and are likely to mislead and/or deceive prospective consumers with respect to the origin and quality of the lenalidomide and apremilast sold at selleckchem.com.

51. The Selleck Defendants' unauthorized use of Celgene's REVLIMID® and OTEZLA® marks constitutes unfair competition.

52. The Selleck Defendants' unauthorized distribution of lenalidomide and apremilast in conjunction with Celgene's REVLIMID® and OTEZLA® marks constitutes unfair competition.

53. The Selleck Defendants' unauthorized distribution of lenalidomide and apremilast results in serious health and safety issues directly related to Celgene's REVLIMID® and OTEZLA® drugs that will irreparably damage the goodwill inherent in Celgene's REVLIMID® and OTEZLA® marks.

## COUNT I – TRADEMARK INFRINGEMENT

54. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

55. The federal registrations of Celgene's REVLIMID® mark evidences Celgene's exclusive right to use its REVLIMID® mark in connection with pharmaceutical preparations, namely, cytokine inhibitory drugs; and pharmaceutical preparations that modulate the immune system. 15 U.S.C. § 1115.

56. The federal registrations of Celgene's OTEZLA® mark evidences Celgene's exclusive right to use its OTEZLA® mark in connection with pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system; pharmaceutical preparations for the treatment of chronic inflammatory diseases, ankylosing spondylitis, psoriasis, psoriatic arthritis and cancer. 15 U.S.C. § 1115.

57. The Federal Registrations for Celgene's REVLIMID® and OTEZLA® marks conclusively evidences the validity of the registered marks, Celgene's ownership of marks, and

Celgene's exclusive right to use the REVLIMID® and OTEZLA® marks in commerce. 15 U.S.C. §§ 1065, 1115.

58. The Selleck Defendants' utilize, without authorization, the REVLIMID® and OTEZLA® marks in connection with the unauthorized sale of lenalidomide and apremilast.

59. The Selleck Defendants' use of REVLIMID and OTEZLA is identical in sound, meaning and appearance to Celgene's REVLIMID® and OTEZLA® marks. The marks create the same commercial impression and are confusingly similar.

60. The Selleck Defendants are marketing and offering for sale lenalidomide and apremilast using the names REVLIMID® and OTEZLA® to consumers in the United States.

61. The Selleck Defendants' adoption and use of the REVLIMID® and OTEZLA® marks in connection with the sale of lenalidomide and apremilast is likely to cause confusion, or mistake, or to deceive as to the source, affiliation, or sponsorship with Celgene's REVLIMID®, and OTEZLA® marks in violation of 15 U.S.C. § 1051 et seq., specifically §§ 1114-18.

62. This unauthorized use by the Selleck Defendants constitutes infringement of Celgene's registered marks, described above, in violation of 15 U.S.C. § 1051 et seq., to the substantial and irreparable injury of the public and of Celgene's marks, business reputation, and goodwill.

63. The activities of the Selleck Defendants complained of herein constitute willful and intentional infringement of Celgene's federally registered REVLIMID® and OTEZLA® marks, in derogation of Celgene's rights in violation of 15 U.S.C. §§ 1114-18. Acts of infringement commenced and have continued in spite of the Selleck Defendants' knowledge that the use of Celgene's REVLIMID® and OTEZLA® marks was and is in contravention of Celgene's rights.

64. Celgene has not given the Selleck Defendants consent directly or indirectly to use the REVLIMID® and OTEZLA® marks, or any mark similar thereto.

65. The Selleck Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Celgene in its marks and in its business, reputation, and goodwill.

66. Celgene's damages from the aforesaid unlawful actions of the Selleck Defendants, to the extent ascertainable, have not yet been determined.

67. Celgene seeks attorney's fees and costs given the willful conduct of the Selleck Defendants.

68. Celgene seeks treble damages given the willful conduct of the Selleck Defendants.

### COUNT II – FEDERAL UNFAIR COMPETITION

69. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

70. Celgene's REVLIMID® and OTEZLA® marks are distinctive and have acquired secondary meaning and significance in the minds of the relevant public.

71. The Selleck Defendants utilize, without authorization, the REVLIMID® and OTEZLA® marks in connection with the sale of unauthorized lenalidomide and apremilast.

72. The lenalidomide and apremilast drugs offered for sale by the Selleck Defendants is not manufactured by Celgene, and no association or relationship exists between Celgene and the Selleck Defendants.

73. Given the restricted distribution limitations provided in connection with the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

74. Given the serious health and safety issues inherent in taking the REVLIMID® and OTEZLA® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

75. Celgene has not given consent directly or indirectly to the Selleck Defendants to use its REVLIMID® and OTEZLA® marks, or any marks similar thereto.

76. The Selleck Defendants' activities are likely to cause confusion, or to cause mistake, or to deceive, causing great harm to Celgene's reputation and goodwill.

77. The Selleck Defendants have unfairly competed with Celgene in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling lenalidomide and apremilast under the designation REVLIMID® and OTEZLA® and by selling lenalidomide and apremilast outside the restricted distribution programs and in violation of required health and safety guidelines. This unauthorized use by the Selleck Defendants constitutes unfair competition to the substantial and irreparable injury of the public and of Celgene's marks, business reputation, and goodwill. 15 U.S.C. § 1125.

78. The activities of the Selleck Defendants complained of herein constitute willful and intentional tort, in derogation of Celgene's rights. Acts of unfair competition commenced and have continued in spite of the Selleck Defendants' knowledge that the use of Celgene's REVLIMID® and OTEZLA® marks was and is in contravention of Celgene's rights.

79. The Selleck Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Celgene in its marks and in its business, reputation, and goodwill.

80. Celgene's damages from the aforesaid unlawful actions of the Selleck Defendants, to the extent ascertainable, have not yet been determined.

81. Celgene seeks attorney's fees and costs given the willful conduct of the Selleck Defendants.

82. Celgene seeks treble damages given the willful conduct of the Selleck Defendants.

### COUNT III – FALSE DESIGNATION OF ORIGIN

83. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

84. This cause of action is for false designation of origin pursuant to 15 U.S.C. § 1125 *et seq*.

85. Celgene's REVLIMID® and OTEZLA® marks are distinctive and have acquired secondary meaning and significance in the minds of the relevant public.

86. The Selleck Defendants utilize, without authorization, the REVLIMID® and OTEZLA® marks in connection with the sale of unauthorized lenalidomide and apremilast.

87. The lenalidomide and apremilast drugs offered for sale by the Selleck Defendants is not manufactured by Celgene, and no association or relationship exists between Celgene and the Selleck Defendants.

88. Given the restricted distribution limitations provided in connection with the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

89. Given the serious health and safety issues inherent in taking the REVLIMID® and OTEZLA® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

90. Celgene has not given consent directly or indirectly to the Selleck Defendants to use its REVLIMID® and OTEZLA® marks, or any marks similar thereto.

91. The Selleck Defendants' adoption and use of the REVLIMID® and OTEZLA® marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Selleck Defendants with Celgene, and Celgene is likely to be damaged by such actions. Accordingly, such conduct constitutes false designation of origin under Section 43(a) of the Lanham Act.

92. The Selleck Defendants have caused confusion in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling lenalidomide and apremilast under the designation REVLIMID® and OTEZLA® and by selling lenalidomide and apremilast outside the restricted distribution programs and in violation of required health and safety guidelines.

93. The Selleck Defendants had knowledge of the falsity of the designation of origin in that they knew, among other things, of Celgene's reputation and good will developed through Celgene in its REVLIMID® and OTEZLA® marks.

94. These actions of the Selleck Defendants are likely to confuse, mislead, and deceive members of the public as to the origin or sponsorship of the Selleck Defendants and Celgene in violation of 15 U.S.C. § 1125(a).

95. The aforementioned activities by the Selleck Defendants constitute unfair competition and unfair trade practices, and are likely to cause confusion, mistake, or deception in violation of 15 U.S.C. § 1125(a).

96. The Selleck Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the intellectual property rights of Celgene, and its business, reputation and goodwill.

97. Celgene's damages from the aforesaid unlawful actions of the Selleck Defendants, to the extent ascertainable, have not yet been determined.

98. Celgene seeks attorney's fees and costs given the willful conduct of the Selleck Defendants.

99. Celgene seeks treble damages given the willful conduct of the Selleck Defendants.

## COUNT IV -- DILUTION

100. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

101. This cause of action is for dilution pursuant to 15 U.S.C. § 1125(c).

102. Celgene's REVLIMID® and OTEZLA® marks are distinctive.

103. Through Celgene's longstanding use of its REVLIMID® and OTEZLA® marks on its drugs and prominently displayed in its promotional literature, and through the significant amount, volume and geographic extent of Celgene's sales, Celgene's REVLIMID® and OTEZLA® marks are famous.

104. The Selleck Defendants' utilize, without authorization, the REVLIMID® and OTEZLA® marks in connection with the sale of unauthorized lenalidomide and apremilast.

105. The lenalidomide and apremilast drugs offered for sale by the Selleck Defendants are not manufactured by Celgene, and no association or relationship exists between Celgene and the Selleck Defendants.

106. Given the restricted distribution limitations provided in connection with the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

107. The Selleck Defendants' adoption and use of the REVLIMID® and OTEZLA® marks is likely to cause dilution of Celgene's REVLIMID® and OTEZLA® marks. Accordingly, such conduct violates 15 U.S.C. § 1125(c).

108. The Selleck Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the intellectual property rights of Celgene, and its business, reputation and goodwill.

109. Celgene's damages from the aforesaid unlawful actions of the Selleck Defendants, to the extent ascertainable, have not yet been determined.

**COUNT V – VIOLATION OF NEW JERSEY DECEPTIVE TRADE PRACTICES ACT**

110. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

111. The Selleck Defendants have practiced deceptive business and trade practices in this district by various acts, including marketing, offering for sale, and selling lenalidomide and apremilast under the designation REVLIMID® and OTEZLA® and by selling lenalidomide and apremilast outside the restricted distribution programs and in violation of required health and safety guidelines.

112. The Selleck Defendants' aforesaid conduct constitutes unfair, unlawful, and deceptive business and trade practices in violation of N.J. Stat. § 56:8-2.

113. Many of these wrongful acts occurred in the State of New Jersey and harmed the New Jersey public at large.

114. These wrongful acts have proximately caused and continue to cause Celgene substantial injury, including loss of customers, dilution of its goodwill, confusion of potential customers, injury to its reputation, and diminution in the value of its products and technology. These actions will cause imminent irreparable harm and injury to Celgene, the amount of which will be difficult to ascertain, if they continue.

115. Celgene is without an adequate remedy at law.

116. Celgene is entitled to an injunction restraining the Selleck Defendants, and all persons or entities acting in concert with it, from engaging in further such unlawful and deceptive conduct.

117. Celgene is entitled to recover from the Selleck Defendants the damages sustained by it as a result of the Selleck Defendants' wrongful acts as hereinabove alleged. The amount of such damages cannot be determined at this time.

118. Celgene is further entitled to recover from the Selleck Defendants the gains, profits, and advantages it has obtained as a result of their wrongful acts as hereinabove alleged. Celgene is at present unable to ascertain the full extent of these gains, profits, and advantages, but Celgene is informed and believes and based thereon alleges that the Selleck Defendants have obtained such gains, profits, and advantages in an amount thus far undetermined, but in excess of $75,000.

119. The conduct of the Selleck Defendants was and is fraudulent, oppressive, malicious, and in conscious disregard of the rights of Celgene, and Celgene is therefore entitled to punitive damages against the Selleck Defendants.

## PRAYERS FOR RELIEF

**WHEREFORE**, Celgene prays for relief against the Selleck Defendants as follows:

(1) That the Court preliminary and permanently enjoin and restrain the Selleck Defendants, their officers, directors, agents, employees and all persons in active concert or participation with it who receives actual notice of the injunction, by personal service or otherwise, from doing, abiding, causing or abetting any of the following:

(a) infringing, inducing or contributing to the infringement of Celgene's intellectual property;

(b)     engaging in any acts or activities directly or indirectly calculated to infringe the REVLIMID® and OTEZLA® marks;

(c)     using in selling, offering for sale, promoting, advertising, marketing or distributing of press releases, articles, advertisements or marketing materials that infringe upon Celgene's rights;

(d)     using any designation, term, mark, slogan, logo, configuration or design that is confusingly similar to the REVLIMID® and OTEZLA® marks; and

(e)     otherwise competing unfairly with Celgene in any manner whatsoever.

(2)     That the Court find that the Selleck Defendants are infringing Celgene's REVLIMID® and OTEZLA® marks, is diluting Celgene's REVLIMID® and OTEZLA® marks, is falsely designating the origin of their goods, and is competing unfairly with Celgene.

(3)     That the Court Order the Selleck Defendants to deliver up to Celgene for destruction, at the Selleck Defendants' expense, all newsletters, articles, web site materials, literature, brochures, promotional materials, advertisements and other communications to the public in the possession or under the control of the Selleck Defendants, and any other material or any representations that are or may contain designations similar to the REVLIMID®, and OTEZLA® marks.

(4)     That the Court Order the Selleck Defendants to account for and pay to Celgene the damages to which Celgene is entitled as a consequence of the infringement.

(5)     That the Court Order the Selleck Defendants to account for and to pay over to Celgene all damages suffered by Celgene as a result of the Selleck Defendants' unfair competition.

(6) That the Court Order the Selleck Defendants to account for and to pay over to Celgene all damages suffered by Celgene as a result of the Selleck Defendants' false designation of origin.

(7) That the Court Order the Selleck Defendants to account for and pay over to Celgene all profits received by the Selleck Defendants from their unlawful acts, and for their deceptive trade practices, in an amount consisting of the gains, profits, and advantages the Selleck Defendants have obtained as a result of their wrongful acts as hereinabove alleged, which damages will be proven with greater precision at trial.

(8) That the Court Order the Selleck Defendants to account for and pay over to Celgene all profits received by the Selleck Defendants from their unlawful acts.

(9) That the Court enter an order placing reasonable but effective restrictions on the future transactions and activities of the Selleck Defendants so as to prevent fraud on the Court and so as to ensure the capacity of the Selleck Defendants to pay, and the prompt payment of, any judgment entered against the Selleck Defendants in this action.

(10) That the Court award Celgene its compensatory, incidental, and consequential damages.

(11) That the Court award Celgene enhanced, treble, and/or punitive damages.

(12) That the Court award Celgene its reasonable attorney's fees and the costs of this action.

(13) That the Court grant Celgene such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

Celgene demands a trial by jury on all triable issues of fact.

Dated: December ___, 2015

Respectfully submitted by:

COZEN O'CONNOR

/s/ Melanie A. Miller
Melanie A. Miller (MM 2992)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

and

Camille M. Miller (to be admitted pro hac vice)
J. Trevor Cloak (to be admitted pro hac vice)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-7273 – Telephone
(215) 701- 2273 – Facsimile
cmiller@cozen.com – E-Mail
jcloak@cozen.com – E-Mail

*Attorneys for Plaintiff, Celgene Corporation*